UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICK DENILSON C. H.,[1]<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER,<br>Respondent. | Case No. 1:26-cv-1524-KES-FJS (HC)<br>(A-Number 202-148-233)<br>FINDINGS AND RECOMMENDATION THAT THE PETITION FOR WRIT OF HABEAS CORPUS BE GRANTED AND PETITIONER BE GIVEN A BOND HEARING<br>(ECF No. 1) |

Petitioner Erick Denilson C.H. ("Petitioner") is an immigration detainee, proceeding with counsel, seeking a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.)

## I. BACKGROUND

Petitioner, a native and citizen of Guatemala, entered the United States without inspection on September 23, 2014. (ECF No. 10, Ex. B.) Petitioner later encountered U.S. Border Patrol

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the court omits petitioner's full name, using only the first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-lsuggestion_cacm_0.pdf.

agents near Eagle Pass, Texas, and was placed in removal proceedings. (ECF No. 10 at 3.) Petitioner further indicates he is pursuing a claim for asylum, petitioning for lawful permanent residency, and petitioning for admission as an alien spouse. (ECF No. 1 at 10.)

On April 8, 2024, Petitioner was arrested in Sacramento, California, for "DUI Causing Bodily Injury." (ECF No. 10, Ex. B at 4.) The court also notes that Petitioner's record identifies a previous criminal charge from August 3, 2018, for "CA for BP 25662(A) Minor in Possession of Alcohol". (*Id.* at 3–4.) The record does not show a disposition for either arrest. (*Id.* at 4.)

On June 17, 2025, Petitioner reported for an immigration hearing and was taken into the custody of U.S. Immigration and Customs Enforcement ("ICE") "for being in violation of immigration law." (*Id.* at 3.) Petitioner has now been in detention for roughly fifteen months.

On February 3, 2026, an immigration judge denied Petitioner's request for custody re-determination pursuant to 8 C.F.R § 1236. (ECF No. 10-1 at 2.) The immigration judge relied on the Board of Immigration Appeal's ("Board") decision in *Hurtado*[2] and also referenced a "pending DUI wherein the respondent struck a median and was hospitalized. Danger. Detained 7.5 months. EWI." (ECF No. 10-1 at 2.) Petitioner subsequently filed the instant petition for a writ of habeas corpus on February 23, 2026, and a motion for a temporary restraining order. (*See* ECF Nos. 1, 4.) Petitioner's motion for a temporary restraining order was denied on April 13, 2026. (ECF No. 19.)

While the instant petition primarily argues that Petitioner's detention has become unreasonably prolonged under *Zadvydas*, in the view of the assigned district judge in this matter, Petitioner is actually challenging his "detention without a § 1226(a) bond hearing[.]" (ECF Nos. 1, 9); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Accordingly, the assigned district judge ordered Respondents to show cause why the petition should not be dismissed based on the court's prior orders. (*Id.*)

---

[2] In *Matter of Yajure Hurtado*, the Board held that immigration judges lack jurisdiction to hear a request for bond where the noncitizen is detained under section 1225(b)(2)(A). 29 I. & N. Dec. at 228-29.

Respondents indicate that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). (*See generally* ECF No. 10.) Respondents further argue that since Petitioner received a custody redetermination hearing on February 3, 2026, he should be required to exhaust his administrative remedies prior to seeking habeas relief. (*Id*. at 3.)

Although Petitioner retained counsel since the instant petition was filed, Petitioner has not clarified what detention authority he believes governs his circumstances. Moreover, on May 28, 2026, Petitioner filed supplemental briefing, arguing, for the first time, that he is not required to exhaust administrative remedies and that he is entitled to "a substantive and meaningful bond hearing." (ECF No. 33 at 2.) Petitioner does not specifically identify how the February 3, 2026, bond hearing was inadequate or otherwise lacked substance. (*See id.*)

The undersigned also takes judicial notice that an immigration judge ordered removal on June 17, 2026, and that the Board received the appeal on July 16, 2026, which remains pending at the time of these findings and recommendations.[3]

## II. DISCUSSION

Resolution of the Petition requires (1) identification of the basis for detention, (2) analysis of whether administrative remedies have been exhausted, and, if so, (3) an evaluation of Petitioner's statutory and constitutional due process claims.

### A. Basis of Detention

As outlined above, the assigned district judge construed the instant petition as a challenge to Petitioner's continued "detention without a § 1226(a) bond hearing[.]" (ECF No. 9.) Recently, in *Rodriguez Vazquez v. Bostock*, the Ninth Circuit held that the mandatory detention scheme of 8 U.S.C § 1225(b) applies *only* to noncitizens entering the United States at the border. *See*

---

[3] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited September 28, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [] therein."); *Argueta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

*Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172-73 (9th Cir. 2026). Here, Petitioner was detained by immigration officials in June 2025 in Sacramento, California, several years after his initial entry into the United States and after his initial encounter with immigration officials. (*See generally* ECF No. 10.) Hence, *Bostock* frustrates Respondent's reliance on 8 U.S.C. § 1225(b), (ECF No. 10 at 2), as the basis for detention.

Because Petitioner's appeal of his removal order remains pending, his detention has not shifted to 8 U.S.C. § 1231, either. *See Avilez v. Garland*, 69 F.4th 525, 535 (9th Cir. 2023).

Because neither section 1225(b) nor 1231 apply to Petition, the court considers applicability of section 1226(a) and 1226(c). As to the latter, there is nothing in the record indicating that Petitioner was detained due to any prior qualifying criminal conviction. While the record indicates that Petitioner was arrested on two previous occasions for alcohol related offenses, the record before the court reflects no disposition for either arrest. (ECF No. 10, Ex. B at 3.) It follows that Petitioner is not subject to detention under section 1226(c) because that section applies to aliens who have committed certain crimes or who present national security concerns. 8 U.S.C. § 1226(c)(1)(A)–(E), (4); *see also Miao v. Chestnut*, No. 1:26-cv-01271-KES-SKO (HC), 2026 WL 947020, at *1 (E.D. Cal. April 7, 2026) (holding that an arrest alone is insufficient to trigger section 1226(c)).

Having eliminated applicability of sections 1231, 1225(b), and 1226(c), the court applies the "default rule," *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018), of section 1226(a). Section 1226(a) provides "'extensive procedural protections' including several layers of review of the initial custody determination, 'an initial bond hearing before a neutral decisionmaker, the opportunity be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change.'" *Edin C.R. v. Warden, Cal. City Det. Facility*, No. 1:26-CV-05884-RLP, 2026 WL 2254610, at *1 (E.D. Cal. Aug. 5, 2026) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022)).

B. Exhaustion of Administrative Remedies

In a passing reference, Respondents argue that to the extent Petitioner challenges the sufficiency of the immigration court's findings on detention, Petitioner has failed to exhaust administrative remedies. (ECF No. 10 at 3-4.) In habeas cases, administrative exhaustion typically requires that the Board render a decision on any pending appeals of the immigration judge's order. *See Leonardo v. Crawford,* 646 F.3d 1157, 1160 (9th Cir. 2011) (explaining that immigrant detainees cannot seek habeas relief in district court until the Board has rendered its decision, unless the detainee can demonstrate grounds for waiver of the exhaustion requirement). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies[.]" *Id.*

Courts in this district, including the assigned district judge in this matter, have waived the exhaustion requirement for noncitizens in Petitioner's posture. *See J.A.C.P. v. Wofford,* No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at *7 n.9 (E.D. Cal. Oct. 27, 2025) ("[P]ursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens present in the United States without admission are "seeking admission" for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained") (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025)). Here, the immigration court cited *Hurtado* when it ruled on Petitioner's detention in February 2026. (ECF No. 10-1 at 2.) Respondents reinvigorated their reliance on section 1225(b) in their response to this Petition. (ECF No. 10 at 2). Given the jurisdictional bar that the immigration court invoked in the prior detention hearing, this court will not invoke failure to exhaust administrative remedies as a bar to Petitioner's habeas claim.

C. Due Process

The court next considers whether Petitioner's due process rights were violated either facially under section 1226(a) or as applied. The Ninth Circuit held that the procedural safeguards of section 1226(a) are sufficient to withstand a facial due process challenge. *Rodriguez Diaz*, 53 F.4th at 1204-05, 1210-13. The court, therefore, evaluates Petitioner's as-applied challenge.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ...

deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." *Demore v. Kim*, 538 U.S. 510, 531 (2003); *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure"). Moreover, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522, *quoted in Rodriguez Diaz*, 53 F.4th at 1206.

There is an open question on the appropriate test to use when evaluating a due process claim in immigration detentions like Petitioner's. The Ninth Circuit has noted that many courts have applied the *Mathews*[4] test in considering due process challenges in the immigration context. *See Rodriguez Diaz*, 53 F.4th at 1206 (noting that the government sought to use a substitute for the *Mathews* test that was "not specific" but "focuses more exclusively on the government's asserted interests in detaining aliens who are subject to removal"). Yet the Supreme Court has resolved some constitutional challenges to immigration detention without invoking *Mathews*. *See, e.g., Demore*, 538 U.S. at 523, 526–29; *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims"). *But see Rodriguez Diaz*, 53 F.4th at 1206 (noting that the Supreme Court applied *Mathews* in considering a due process challenge to an immigration exclusion hearing). Notably, the Ninth Circuit used the *Mathews* test and assumed (without deciding) that it applied to a due process claim for a second bond hearing in a section 1226(a) detention. *Rodriguez Diaz*, 53 F.4th at 1206-07. Thus, the court finds application of the *Mathews* test in this case appropriate where Petitioner seeks a second bond hearing in a section 1226(a) detention.

Under the *Mathews* test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." *Mathews*, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous

[4] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

In the first factor, the court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. *Mathews*, 424 U.S. at 335. "[I]n evaluating the first prong of the *Mathews* analysis, it is not sufficient to simply count the months of detention and leave it at that." *Rodriguez Diaz*, 53 F.4th at 1208. Instead, "[t]he process received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered." *Id*. It is "important not to overstate the strength of Petitioner's showing under the first *Mathews* factor." *Id.* at 1213.

Here, Petitioner lived at liberty in the United States for ten years prior to his re-detention. It follows that he maintains an interest in his release because his detention denies him access to his family and his employment opportunities. *Hernandez* 872 F.3d at 993 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." At the time of these findings, Petitioner has been in detention for roughly fifteen months. That length of time qualifies as "prolonged" *Cf. Rodriguez Diaz*, 53 F.4th at 1207. On the other hand, it appears that Petitioner did not avail himself the benefit of an administrative appeal of the February 2026 detention decision and that Petitioner has opposed and continues to appeal the June 17, 2026, order of removal. *Cf. id.* at 1207-06. On balance, this factor tips slightly in favor of Petitioner.

In the second factor, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" *Jimenez*, No. 19-CV-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020). In the instant case, Petitioner received a custody re-determination hearing almost

eight months ago. (ECF No. 10-1.) Yet the immigration court held—erroneously, according to *Bostock*, 183 F.4th at 1193—that it lacked jurisdiction to consider release. (ECF No. 10-1 at 2 (citing *Matter of Yajure Hurtado,* 29 I. & N. Dec. 216 (BIA 2025)). Thus, although Petitioner's case is facially similar to the petitioner from whom the Ninth Circuit denied a second bond hearing in *Rodriguez Diaz,* a closer examination reveals that the earlier bond hearing in *Rodriguez Diaz* was not denied on jurisdictional grounds. 53 F.4th at 1194, 1209. And while this court concludes—correctly, according to *Bostock*, 183 F.4th at 1193 —that section 1226(a) applies to Petitioner, it remains uncertain whether the immigration court would again stymie relief on (flawed) jurisdictional grounds if Petitioner sought another bond hearing from the immigration court under 8 C.F.R. § 1003.19(e), *cited in Rodriguez Diaz*, 53 F.4th at 1209.[5] This uncertainty distinguishes evaluation of this second factor from the section 1226(a) analysis in *Rodriguez Diaz*. Accordingly, the court finds that the risk of an erroneous deprivation is high and the scenario presented here distinguishable from the facts evaluated in *Rodriguez Diaz*. This second *Matthews* factor, therefore, tips for Petitioner.

In the third *Mathews* factor, the court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. The government's aim of "protecting the public from dangerous criminal aliens" and "increas[ing] the chance that, if ordered removed, the aliens will be successfully removed" are "interests of the highest order that only increase with the passage of time." *Rodriguez Diaz*, 53 F.4th at 1208 (quotations omitted). As other courts have recognized, however, the key government interest at stake here "is not the continued detention of

---

[5] The immigration court's alternative reliance on danger grounds to deny bond at Petitioner's February 2026 hearing, (ECF No. 10-1), does not command a different outcome. Because the immigration court found it lacked jurisdiction to hold a bond hearing under *Hurtado*, its danger findings are either dictum or nullities. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) ("A statement is dictum when it is made during the course of delivering a judicial opinion, but ... is unnecessary to the decision in the case and [is] therefore not precedential.") (citation modified). *See also Orff v. United States*, 358 F.3d 1137, 1149-50 (9th Cir. 2004) (Because "the district court never had jurisdiction to issue its rulings on the merits . . . [w]e must vacate as nullities [those] rulings" and they are therefore not "binding in this or any other case").

Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Dir.*, No 19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. March 25, 2020) (collecting cases). Here, the government's interest is tied to Petitioner's prior criminal arrests and the immigration judge's earlier dictum that he poses a risk of danger. The argument may have merit, but these arguments can be advanced (or, in this case, re-advanced) at a bond hearing. Providing a bond hearing would not undercut the government's asserted interest in protecting the public or accomplishing removal; it provides a forum to substantiate those interests. Given "the minimal cost of conducting a bond hearing, and the ability of the [immigration judge] to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as [p]etitioner's." *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019), *quoted in Zagal-Alcaraz*, 2020 WL 1862254, at *7. The imposition of a second bond hearing after over a year of custody following an initial bond hearing that was resolved on flawed jurisdictional grounds does not undermine the weighty and substantial interests the government pursues here.

Balancing the *Mathews* factors, Petitioner has shown that his continued detention under section 1226(a) without a further bond hearing would be in violation of due process. The undersigned therefore recommends that Petitioner's request for a writ of habeas corpus be granted in part and that the government be required to provide Petitioner with a constitutionally adequate bond hearing.

D. Burden of Proof at Bond Hearing

The question is now who should bear the burden of proof at the bond hearing. As other courts have also concluded, the undersigned finds that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). *See Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under § 1226(c)). In the event Petitioner is "determined not to

be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017).

## IV. FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, the court hereby RECOMMENDS that the petition for writ of habeas corpus (ECF No. 1) be GRANTED in part and that Respondents be DIRECTED to provide Petitioner with a bond hearing within fourteen (14) days before an immigration judge wherein the Government must demonstrate by clear and convincing evidence, in accordance with the requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011), that Petitioner is not a flight risk or a danger to the community, or in the alternative, release Petitioner on appropriate conditions of supervision. The court does not recommend granting any of the other forms of habeas relief Petitioner seeks.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B). Within fourteen (14) days after being served with a copy of these findings and recommendations, a party may file written objections with the court. The document should be captioned “Objections to Magistrate Judge’s Findings and Recommendations.” Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the court. Any pages filed in excess of the 15-page limit may not be considered. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court’s judgment.

IT IS SO ORDERED.

Dated: **October 1, 2026**

UNITED STATES MAGISTRATE JUDGE